# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| ARLIN D. STORY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:06-CV-2212-M |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on December 1, 2006. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On August 30, 2005, plaintiff Arlin Story (hereinafter "Plaintiff") filed an application for a period of disability and disability insurance benefits, claiming disability due to blindness in his right eye. (Administrative Record (hereinafter "Tr.") at 54-56). Plaintiff alleged a disability onset date of January 1, 2000. (Tr. at 70).

The Administrative Law Judge ("ALJ") conducted a hearing on June 8, 2006. (Tr. at 123-139). On July 25, 2006, the ALJ denied Plaintiff's request for benefits, finding that he was not disabled because he did not have a severe impairment or combination of impairments. (Tr. at 16-17).

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on October 2, 2006, the Appeals Council denied his request. (Tr. at 4). Therefore, the ALJ's

decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed his federal complaint on December 1, 2006. Defendant filed an answer on January 30, 2007. On April 2, 2007, Plaintiff filed a brief, followed by Defendant's brief on May 22, 2007 and Plaintiff's reply brief on June 6, 2007.

<u>Standard of Review - Social Security Claims</u>: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

<u>Discussion</u>: To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that he or she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Substantial gainful activity is defined

as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §404.1520. Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ proceeded to step two, finding that Plaintiff's right eye blindness was not a severe impairment (Tr. at 16).[1] He therefore denied Plaintiff's request for benefits. (Tr. at 18).

Plaintiff first argues that the ALJ erred in finding that his right eye blindness was not severe and that the ALJ's finding is not supported by substantial evidence. A severe impairment is an "impairment or combination of impairments which significantly limits [the claimant's]

---

[1] Plaintiff contends that the ALJ erred in failing to address the first step – whether he was engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(i) and (b). As reflected in the transcript of the administrative hearing, the information was ambiguous with respect to the last year in which he received earnings (Tr. at 125-126). However, there is nothing in the record indicating that he earned any work-related income subsequent to the end of 2003, which is wholly consistent with the ALJ's Finding of Fact 2, i.e. "[t]he claimant has not engaged in substantial gainful activity at any time relevant to this decision." (Tr. at 15). Moreover, Plaintiff can show no prejudice to the extent that the descriptive paragraph under this finding suggests that no finding was made, given that an affirmative finding at the step would have terminated the sequential analysis with a determination that he was not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4)(i) and (b).

3

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Plaintiff bears the burden of proving that his impairment is severe. *See* 20 C.F.R. § 404.1512(a); *Masterson v. Barnhart*, 309 F.3d 267, 271-272 (5th Cir. 2002). In making a determination at step two, the impairment or combination of impairments must be such that it limits a claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1521.

Plaintiff's medical records reflect that he has been receiving medical treatment since 2001 for an infection in his right eye caused by Herpes Simplex virus. From 2001 through 2002, Plaintiff was treated by Dr. Shelby A. Wyll in Garland, Texas. On September 11, 2001, Dr. Wyll treated Plaintiff, noting that vision in his right eye was 20/200 and his left eye was 20/50. (Tr. at 106). Dr. Wyll noted diffuse corneal edema in Plaintiff's right eye and prescribed medications. At a follow-up appointment three days later, Dr. Wyll noted that Plaintiff's vision in his right eye was 20/80 and the eye was "a lot better – comfy" and concluded that it was "improving." (Tr. at 105). The next week, Dr. Wyll noted that Plaintiff's vision in his right eye was 20/70 and that Plaintiff's vision had improved, although she described the improvement as slow. (Tr. at 105). Plaintiff again saw Dr. Wyll on October 9, 2001 for a check up, with Dr. Wyll noting that Plaintiff was "better, [suffering] no pain." (Tr. at 104). Dr. Wyll noted that Plaintiff's right eye vision was 20/80 and left eye vision was 20/50. (Tr. at 104). Dr. Wyll diagnosed Plaintiff as having herpetic keratouveitis, an eye infection caused by the Herpes

4

Simplex virus and prescribed Plaintiff medications including Viroptic, Betimol and Prednisone. (Tr. at 104). In an October 12, 2001 follow-up visit, Dr. Wyll describes Plaintiff's right eye as "more comfy" and noted that the "epithelial defect [had] resolved." (Tr. at 104). In these two months of treatment, Plaintiff's right eye vision had improved from 20/200 to 20/70.

On June 19, 2002, Plaintiff was treated by a Dr. Rudolf Churner at Heritage Eye Center in McKinney, Texas, having discontinued use of the medications prescribed by Dr. Wyll and complaining that his right eye was swollen and had been "filmy" for the last four or five weeks. (Tr. at 107). Plaintiff's vision in his right eye was noted to be 20/200 and his left eye vision was 20/50. Dr. Churner restarted Plaintiff on the medications previously prescribed by Dr. Wyll. Three days later, Dr. Churner again examined Plaintiff and noted in a letter to a Dr. Schacherer in Wylie, Texas, that Plaintiff "has been having HSV uveitis controlled with topical steroids. Now that he has been off for the last two weeks he has had a new flare-up." (Tr. at 109). Dr. Churner noted that Plaintiff's right eye was best corrected at 20/70 "with a hazy cornea, deep vessel ingrowth and some endothelial deposits. The posterior pole looks good but the view is through a cloudy and hazy cornea." Dr. Churner started Plaintiff back on medication, but noted that Plaintiff would "probably need a maintenance level of medicine once we get this [infection] under control." Three days of treatment with these medications improved Plaintiff's right eye vision from 20/200 to 20/70.

Over the next 10 months or so, Plaintiff failed to show up for scheduled appointments with Dr. Churner, prompting him to order that Plaintiff could not receive medication unless he was seen in the office. (Tr. at 111, 112). Notes in Plaintiff's records indicate that he canceled or rescheduled several of these appointments because he was unable to get off work or was in

5

Houston working at the time, despite the fact that he claims that he was disabled almost three years before. (Tr. at 110, 112). On May 29, 2003, Plaintiff was treated by Dr. Churner, complaining of increased redness in his right eye, with a film over the eye starting 10 to 12 days before. Plaintiff also complained of headaches. Upon examination, Plaintiff was determined to have only "count fingers" vision in his right eye and 20/40 vision in his left eye. (Tr. at 113). Plaintiff reported that he had used all of his eye medication. Dr. Churner stressed to Plaintiff the need for follow-up care and advised him that he if he doesn't follow-up he will need to find another doctor. Dr. Churner recommended that Plaintiff restart his eye medications. Plaintiff returned to Dr. Churner on June 5, 2003, reporting that he was "much better." (Tr. at 114). Plaintiff's right eye vision was noted as 20/300 and his left eye was 20/40. (Tr. at 114). Dr. Churner advised Plaintiff that his visual acuity may not return to 100 percent of what it was and noted that his eye was responding slightly to the medications. (Tr. at 114). Plaintiff again saw Dr. Churner on June 30, 2003, reporting that his eye was better but he still had a film over his eyes and was photophobic. (Tr. at 117). Plaintiff's right eye vision was 20/200. On August 25, 2003, Plaintiff saw Dr. Churner, reporting that his right eye was sensitive to light and his visual acuity was no better. (Tr. at 118). Plaintiff's vision was noted as 20/200 in the right eye and 20/30 in the left eye. Dr. Churner discussed a cornea transplant operation with Plaintiff; however, Plaintiff declined the operation, with Dr. Churner noting that Plaintiff felt that his visual acuity was increasing. (Tr. at 118).

The next medical records are dated October 14, 2005. An exam by Heritage Eye Center notes an "SSA Efficiency Score" of 30% for Plaintiff's right eye and 93% for his left eye. (Tr. at 99-100). In addition, a physician with Disability Determination Services examined Plaintiff,

noting that Plaintiff complained of blurred and decreased vision in his right eye since 2001 due to Herpes Simplex virus infection. (Tr. at 97). The examining physician reported "count fingers" vision in Plaintiff's right eye and 20/25 vision, with correction, in his left eye. The diagnosis was reported as corneal scarring in the right eye due to probable Herpes Simplex virus infection, decreased vision in the right eye due to corneal scarring and refractive error. (Tr. at 98). The physician noted that Plaintiff had a "poor prognosis of any visual rehabilitation for [his] right eye."

On October 31, 2005, the state agency medical consultants concluded that Plaintiff had a non-severe impairment. (Tr. at 101). That determination was affirmed by the state agency medical consultants on January 13, 2006. (Tr. at 102).

Substantial evidence supports the ALJ's conclusion that Plaintiff's "monocular vision is no more than a slight abnormality" and, therefore, does not qualify as a severe impairment. (Tr. at 17). There is no medical evidence of problems with Plaintiff's left eye and, in fact, the latest eye exam indicates that Plaintiff has 20/25 vision in his left eye. None of the examining physicians suggested that Plaintiff is disabled as a result of blindness in his right eye. *See Vaughan v. Shalala,* 58 F.3d 129, 131 (5th Cir. 1995) (ALJ's decision supported by fact that no physician who examined Plaintiff announced her disabled). Nor does Plaintiff's right eye blindness meet the criteria for statutory blindness under the Social Security regulations. See Pt. 404, Subpt. P, App. 1, 2.00A.2., 2.02 and 2.03A. Plaintiff's reliance on his own testimony as to the severity of his impairment, without supporting medical evidence, is not sufficient to prove disability and the fact that Plaintiff suffers a visual impairment, alone, does not render him disabled. *See, e.g.*, Social Security Ruling 85-15 (stating visual impairments are nonexertional

7

and "as long as [a claimant] retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in the workplace), there would be a substantial number of jobs remaining across all exertional levels.")

Plaintiff argues that the ALJ erred by not making an explicit finding as to the credibility of Plaintiff's subjective complaints. In the Fifth Circuit, an ALJ must give reasons for rejecting claimant's subjective testimony only where the *evidence clearly favors the claimant*. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (ALJ not required to "follow formalistic rules in his articulation"). This is not such a case. Nevertheless, the ALJ is required to consider Plaintiff's symptoms and limitations and reach conclusions in light of Plaintiff's allegations and the medical evidence. *Wilson v. Barnhart*, 210 Fed.Appx. 448, 451, 2006 WL 3786117, *2 (5th Cir. 2006) (holding that ALJ properly evaluated Plaintiff's credibility where the ALJ "adequately considered [Plaintiff's] symptoms and claimed limitations, and properly analyzed the findings in light of her allegations and the medical evidence").

In Story's case, the ALJ did not expressly find his testimony to be incredible or exaggerated. The ALJ discussed, in detail, Plaintiff's testimony, including Plaintiff's subjective complaints of sensitivity to light and headaches. (Tr. at 17). The ALJ considered the factors outlined in Social Security Ruling 96-7p for consideration in assessing credibility – Plaintiff's daily activities, Plaintiff's symptoms, factors that precipitate and aggravate those symptoms, the medications prescribed to Plaintiff, and the medical treatment Plaintiff has received. However, the ALJ found that his testimony and the medical evidence did not indicate any identifiable medical condition affecting Story's ability to work and concluded that "[Plaintiff's] statements are inconsistent with the medical evidence . . ." (Tr. at 17), in essence finding the observations in

8

the medical evidence more persuasive than Story's hearing testimony. Such credibility assessments are entirely within the province of the ALJ. *Falco*, 27 F.3d at 164 ("The ALJ found the medical evidence more persuasive than the claimant's own testimony. These are precisely the kinds of determinations that the ALJ is best positioned to make."). Therefore, the ALJ did not err in his assessment of Plaintiff's credibility.

Plaintiff finally argues that the ALJ improperly relied on Plaintiff's failure to pursue medical treatment for his eye problems in concluding that his condition was not severe. An ALJ may not use a claimant's inability to afford the prescribed treatment to show she is not disabled. *See Sanders v. Apfel*, 136 F.3d 137 (5th Cir. 1998). Nothing in the ALJ's decision suggests that he was invoking the regulations under which a claimant who suffers from a severe impairment may be found not disabled because he refuses to undergo treatment. *See* 20 C.F.R. § 404.1530. As summarized above, the recorded incidents in which Story discontinued to take prescribed medications and failed to keep doctors' appointments which resulted in Dr. Churner's admonition on May 29, 2003, occurred while he was working in Houston. Although he declined to undergo a corneal transplant operation, none of the records indicate that he discontinued using prescribed medications due to an inability to pay. Further, although represented by counsel at the administrative hearing, Plaintiff gave no suggestion that he had discontinued use of the medications due to financial impecunity. It was not improper for the ALJ, when assessing Plaintiff's overall impairments, to draw the inference that since he was not taking medications for significant periods of time that the impairments were less severe than Plaintiff's testimony would otherwise suggest.

In a letter to the Appeals Council in September of 2006, following the ALJ's decision,

9

Plaintiff states that he was self-employed, had no medical insurance and paid out of his pocket for medical expenses. (Tr. at 10). He further states that he could not afford to undergo a corneal transplant operation, although Dr. Churner's notes indicate that Plaintiff declined the surgery because he felt that his vision was improving. (Tr. at 10,118). Plaintiff does not, however, state that he was unable to afford office visits or his medications, and as with his testimony before the ALJ, the credibility to be given to his letter representations was reserved to the Appeals Council.

In any event, even assuming arguendo that the ALJ erred in relying on Plaintiff's failure to continue his prescribed medication or to pursue a corneal transplant because he was unable to afford them, the absence of treatment was not the only piece of evidence upon which the ALJ relied in his assessment. The ALJ also relied upon the lack of objective medical evidence supporting a severe impairment and, as discussed above, the factors outlined in Social Security Ruling 96-7p, including Plaintiff's daily activities, Plaintiff's symptoms, and the treatment Plaintiff received for his eye condition. (Tr. at 17). Therefore, even disregarding the fact that Plaintiff discontinued use of medications prescribed for his condition and declined corneal transplant surgery, substantial evidence supports the ALJ's decision. *See Sanders*, 136 F.3d at 137 (affirming ALJ decision despite error of ALJ in using claimant's failure to seek additional treatment as evidence that she was not disabled).

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 22nd day of October, 2007.

Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.